UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(5)   DIANE BLAKE, and<br>(6)   TODD BLAKE,<br><br>Defendants | )<br>)<br>)<br>)  Criminal No.: 19-10080-NMG<br>)<br>)<br>)<br>)<br>) |

**GOVERNMENT'S CONSOLIDATED SENTENCING MEMORANDUM**

The government submits this memorandum in connection with the sentencing of defendants Diane Blake and Todd Blake. The parties have entered into plea agreements pursuant to FED. R. CRIM. P. 11(c)(1)(C), and, for the reasons set forth below, the government respectfully requests that the Court impose the agreed-upon dispositions: for Diane Blake, a term of imprisonment of six weeks, a $125,000 fine, and two years of supervised release with 100 hours of community service; and for Todd Blake, a term of imprisonment of four months, a $125,000 fine, and two years of supervised release with 100 hours of community service.

**I.    THE OFFENSE CONDUCT**

The Court is by now familiar with the facts of this case, and so the government restates them here only briefly. The Blakes, a married couple, conspired with William "Rick" Singer and others to commit mail and wire fraud and honest services mail and wire fraud by agreeing to make payments styled as "donations" to a University of Southern California ("USC") athletic fund and to Singer's non-profit, the Key Worldwide Foundation ("KWF"), to facilitate their daughter's admission to USC as a purported recruit to the USC women's volleyball team, with the understanding that their daughter was not a legitimate athletic recruit and would not actually play on the team. Diane Blake PSR ¶ 40; Todd Blake PSR ¶ 40 (together, the "PSR"). Todd Blake also

conspired with Singer to commit money laundering by making a payment to KWF, expecting that some of the funds would be used by Singer to facilitate the aforementioned fraud. PSR ¶ 40.

As part of the scheme, Singer informed the Blakes in or about January 2017 that there was "a way to garner a guarantee at USC if that [was their daughter's] first choice." *Id.* ¶ 41. In June 2017, Diane Blake, copying Todd Blake, told Singer that she and her husband were "fully committed to the USC plan." *Id.* ¶ 43. Approximately two months later, Diane Blake, again copying Todd Blake, reiterated that she and her husband "love[d] the USC plan and hope[d] it [would] work out[.]" *Id.* ¶ 45. Singer then informed the Blakes that USC had everything they needed – including the Blakes' daughter's transcript and test scores, which Diane Blake had previously provided to Singer – but Singer said he did not yet know when the Blakes' daughter would be presented to the USC subcommittee for athletic admissions (the "Subcommittee"). *Id.* ¶¶ 45, 43.

In September 2017, after USC athletics administrator Donna Heinel presented the Blakes' daughter to the Subcommittee as a purported volleyball recruit, Singer forwarded a letter to the Blakes notifying their daughter of her conditional admission to USC as a student athlete. *Id.* ¶¶ 46–47. Just two days later, Singer instructed Todd Blake to send a check for $50,000 to "USC Women's Athletics c/o Senior Women's Administrator Donna Heinel." *Id.* ¶ 48. Todd Blake mailed a $50,000 check to USC Women's Athletics that same day. Then, in February 2018, Todd Blake wired $200,000 to KWF. *Id.* ¶ 49. The following month, the Blakes' daughter was formally admitted to USC. *Id.*

That fall, Todd Blake purposely misled USC development personnel regarding the reason for his $50,000 "donation," which had been directed to the women's basketball program. *Id.* ¶¶ 50–51. In response to an inquiry from a USC assistant athletic director, Todd Blake falsely stated that

"[his] financial gift was a one-time event, to commemorate a friend who was a former women's basketball coach." *Id.* ¶ 50. Todd Blake later told Singer, "I've effectively evaded [two requests from USC development personnel], you know, answering anything there. So we're good." *Id.* ¶ 51.

## II.  SENTENCING RECOMMENDATION

The crimes committed by the Blakes were serious. Like other parent defendants who engaged in Singer's "side door" scheme, the Blakes agreed with Singer to pay for an illicit guarantee of admission to an elite university, using their wealth and privilege to buy their daughter an admission spot that should have gone to a more deserving applicant. However, there are factors that make the Blakes less culpable than others who engaged in this scheme. For example, the Blakes engaged in the scheme only once, were not as actively involved as some of the other parents, did not involve their daughter – who did play volleyball, albeit not at the USC level – in the scheme, and were apparently unaware of the falsified athletic profile that Singer submitted to Heinel (*see* PSR ¶ 44).

As between the Blakes, the evidence suggests that Todd Blake was the more active participant in the scheme. He directed the purported donations to USC and KWF and actively misled USC development personnel in an effort to conceal the scheme. Diane Blake was less directly involved in the payments to USC and KWF, but was nonetheless fully complicit, reiterating to Singer on multiple occasions that she and her husband were enthusiastic about "the USC plan."

A sentence of six weeks' imprisonment for Diane Blake is comparable to the sentences that have been imposed on similarly situated defendants in this and related cases. As examples:

- Defendant Lori Loughlin was sentenced to two months in prison after agreeing to pay $500,000 to facilitate her two daughters' admission to USC as fake coxswains. Like Diane Blake, Loughlin's spouse was the more active participant in the scheme.

3

> Unlike Diane Blake, however, Loughlin participated in the scheme twice and made her daughters complicit in her fraud.
>
> - Defendant Jeffrey Bizzack was sentenced to two months in prison after agreeing to pay $250,000 to facilitate his son's admission to USC as a fake volleyball player. Like Diane Blake, Bizzack was less involved in the day-to-day details of the scheme than some of the other parent defendants and did not involve his son in the scheme. In contrast to Diane Blake, however, Bizzack directed the payments to USC and KWF to facilitate his son's admission. Bizzack also accepted responsibility for his crime by coming forward before the government approached him.

A sentence of four months' imprisonment for Todd Blake is likewise comparable to sentences imposed on similarly situated defendants. As examples:

> - Defendant Devin Sloane was sentenced to four months in prison after agreeing to pay $250,000 to facilitate his son's admission to USC as a fake water polo player. Sloane promptly accepted responsibility for his crime, agreeing to plead guilty before being indicted or having the opportunity to review discovery. Like Todd Blake, Sloane rebuffed a USC development officer who sought a legitimate donation. In contrast to Todd Blake, however, Sloane caused his son to pose for a photo to be included in his falsified athletic profile. In addition, when a high school guidance counselor expressed skepticism over his son's admission to USC as an athlete, Sloane engaged in further deception to conceal the fraud and challenged the counselor's "business or legal right" to question his son's admission.
>
> - Defendant Stephen Semprevivo was sentenced to four months in prison after agreeing to pay $400,000 to facilitate his son's admission to Georgetown University as a fake tennis player. Semprevivo promptly accepted responsibility for his crime, agreeing to plead guilty before being indicted or having the opportunity to review discovery. Unlike Todd Blake, Semprevivo involved his son in the scheme, directing him to send a fabricated email to the Georgetown tennis coach.

In addition to avoiding unwarranted sentencing disparities, the proposed sentences for Diane Blake and Todd Blake reflect the history and characteristics of each defendant, and the need for the sentences imposed to constitute just punishment and provide for adequate deterrence. *See* 18 U.S.C. § 3553(a). They likewise account for the seriousness of the offenses, which warrant meaningful terms of incarceration. The proposed sentences are, accordingly, sufficient but not greater than necessary to achieve the ends of Section 3553(a).

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court accept the agreed-upon sentence of six weeks' imprisonment, a $125,000 fine, and two years of supervised release with 100 hours of community service for Diane Blake; and four months' imprisonment, a $125,000 fine, and two years of supervised release with 100 hours of community service for Todd Blake.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    */s/ Leslie A. Wright*
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
STEPHEN E. FRANK
KARIN M. BELL
Assistant United States Attorneys

Date: November 10, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on November 10, 2020 will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

By:    */s/ Leslie A. Wright*
LESLIE A. WRIGHT
Assistant United States Attorney
